Thank you, Chief Judge, and may it please this Honorable Court, I'm Appellant Andrew Schlafly and I'm an attorney, a member of the Bar of this Court. And this case concerns a hostile takeover of a membership organization called Eagle Forum. It was founded by Phyllis Schlafly back in 1975. And I was a longstanding director of the organization and a member, currently a member, still a member of the organization. And what I challenge below with my lawsuit is violation of the bylaws and an improper removal of a group of directors, including myself, who were loyal to Phyllis Schlafly and loyal to Donald Trump, are removal and replacement on the board of this organization and they changed the bylaws without notice to disenfranchise the membership. It is a membership corporation. I want to emphasize that because the other side stated that incorrectly in their brief. So the board is supposed to represent membership and cannot properly disenfranchise membership. Excuse me, would you mind raising the lectern a little bit so your voice picks up better on the mic? I'm sorry, Your Honor. There's a button there on the side that will. Thanks, Chief. Thank you. Thank you for suggesting that. I appreciate that. So what is the decision you're appealing? The decision is in September of 2017 where I sought a preliminary injunction and a TRO to enjoin the annual meeting of this organization. So they were excluding me from the annual meeting because they had improperly removed me and they had changed the bylaws. And I've gone over this again and again since then. And the only way to challenge a hostile takeover like this is to bring a motion for a preliminary injunction to enjoin the meeting that's going to implement the improper bylaws. Counsel, was it a motion for a preliminary injunction or was it a TRO? It was both, Your Honor. I included the request for both in the motion for a TRO and for a preliminary injunction and the lower court denied both. Denied, expressly denied my motion for a preliminary injunction. Never scheduled the evidentiary hearing or anything. And so that is what I'm appealing. So I feel the appeal is proper. It's an excellent point to raise that. But the appeal is proper because it's in the order that the motion for a preliminary injunction is denied. And then it's also, the appeal is also proper because the lower court sua sponte imposed attorney's fees on me and that's appealable as well. And again, this is, it's a textbook challenge to a takeover. It's unusual in federal court. There's no question about it. And I initially brought this case in state court. And I actually sought a remand from, the other side removed it to federal court on the eve of the earlier meeting. And they removed it to federal court, which I didn't understand why this case would be in federal court. These sorts of cases are usually in state courts, usually in Delaware Chancery Court is where you usually see these. And I moved to remand it back to state court, but the lower court denied my motion to remand in early September, denied the other side's motion dismiss, said we're going to litigate it here. And then with the annual meeting upcoming in a week or so, the only thing to do would be for the plaintiff to bring a motion for a TRO and a preliminary injunction to block the annual meeting or have the annual meeting allow me to attend and use proper bylaws rather than improper bylaws. So what can you achieve at this point when the meetings you sought to enjoin have already occurred? That's an excellent point, Chief Judge. The bylaws can be reverted back to where the membership has their rights, and that is irreparable harm and is continuing irreparable harm. The lower court held that there was irreparable harm. I have no remedy at law. I'm not claiming damages and disenfranchisement of a director of membership is irreparable harm. The lower court held that. The other side concedes that in their brief. And so I believe the data phase factors are satisfied. And what I'm seeking is for this court to reverse the lower court's decision, send it back down, and then I would seek a reversion of the bylaws back to the traditional bylaws that allow participation by membership in this organization that restore their voting rights. What was the specific reason that the district court gave for denying the motion for preliminary injunction? Was it mootness? Or did he rule on the merits of your bylaws theory? What the lower court said is that there was irreparable harm, or he conceded there may have been irreparable harm. I'm not sure exactly how he worded that. But he said the irreparable harm happened at a January meeting rather than the annual meeting. So he did not see that the irreparable harm is continuing. And then he never addressed the change of the bylaws issue. He just didn't address it. That, I found that, well, I shouldn't say I found it puzzling, but what, so I think this sort of follows up on the chief's question. What specific remedy do you seek, and what remedy could we possibly grant you at this stage of the proceedings? Yes, Your Honor. I would like to have the bylaws reverted back to what they were. So rescind the improper changes to the bylaws that were done without notice, which disenfranchised the membership, including myself. So I'd like the bylaws changes rescinded that occurred in 2017. And I would like the restoration of the block of directors, including myself, who were loyal to Phyllis Schlafly in support of Donald Trump. And so that removal and replacement of us, I would like that rescinded. So that the state of the organization is restored to January of 2017. And there's no harm to the organization. I mean, that's the other thing that's puzzling about this. There's no- Well, the organization's continued operating over the course of the last year, hasn't it? Well, it has, but it's a non-profit- Would it be of some disadvantage to have to, in essence, turn the clock back and undo business over the course of the last year? It's an excellent point, Chief Judge. But they're not manufacturing goods. It's not a for-profit business. So this is a control fight. It's not really about what the entity is achieving or accomplishing. It's who runs it. Yes, Your Honor. And it's kind of like a church. I mean, I'm hesitant to draw that analogy because the court's not going to want to get involved in a church dispute. But it's a non-profit entity that has a congregation. And there's no harm to the organization to revert the change of directors that occurred, to revert the bylaws. It's the money there is the membership's money. It's the collection box for the membership. And the membership are supportive of my side. It's uncontroverted in the record that the membership is on my side and was opposed to what this faction of directors did. And they had a side deal among themselves. That's uncontroverted in the record. Couldn't the members readjust the membership of the board and make whatever changes you desire through voting? Chief Judge, ordinarily, yes, but they were disenfranchised. So the bylaws changes disenfranchised the membership and left them without rights. And one of the things they did was they took out the use of Robert's Rules of Order from the bylaws. I mean, who's ever heard of that? So the bylaw, Robert's Rules of Order is there to protect the rights of the membership in a membership organization. They took that out of the bylaws. So the members have been left without the rights that they have in every other organization where Robert's Rules of Order or some other parliamentary procedure applies. So the members have been left without rights. There's nothing they can do except to litigate it in court through me. To what extent, and I almost hesitate to bring this up, but can we put out of our minds the, I wouldn't call it parallel litigation, the case that's going to be heard by another panel in January? I suppose we might say that that's neither here nor there. I was trying to, who was it, the philosopher John Rawls and his book, A Theory of Justice, we operate behind a veil of ignorance as far as that case is concerned? It's an unrelated case. An unrelated case. I mean, it really is. And I'm careful about that. I'm an attorney. There really is no duplication of the issues in this case with any other case. The other case before the Eighth Circuit involves intellectual property issues. There are no intellectual property issues here. And I wouldn't duplicate issues. Counsel, I'd like to have you address the notice issue further if you could. Yes. The Eagle Forum brief, I believe, says that not only did they give notice, but it was 22 days in advance. My objection, Judge Graz, is not to the time period, but it's to the substance of the notice. And the notice artfully concealed what the takeover faction was really going to do. So this is a joint appendix 28A, and the notice simply talks about removing three directors. It does say that voting by proxy would be prohibited. That's contrary to Illinois law. But it says nothing about changing the bylaws, and it says nothing about adding directors. So the notice was artfully deceptive. Is that a violation of corporate law, or is that a violation of the bylaws of the entity? Both, Chief Judge. It is a violation of the bylaws, which has standard procedures about giving notice of what the agenda is actually going to be. And Robert's Rules of Order has clear requirements that if you're going to have a meeting, particularly an irregular meeting that this is, you've got to give full, specific notice about what the agenda is. Otherwise, people wouldn't know whether to show up. I mean, think about it. If they're going to have an irregular meeting of an organization, which is what this was in January, you've got to tell people what it is so they know whether to show up. Counselor, in your rebuttal, you can continue on the same issue if you'd like, or you can address the attorney's fees, or you can reserve for rebuttal. I'd like to reserve my time for rebuttal. Thank you, Your Honor. Thank you, Mr. Shaffley. Mr. Boquet? Good morning, Your Honors. May it please the Court? I'd like to kind of bring it back to the data phase factors that Judge Ross relied on in denying the injunctive relief requested by appellant. Data phase does acknowledge that a preliminary injunction may be appropriate even where there's not a mathematical probability of success. In other words, there doesn't necessarily have to be a greater than 50 percent chance of success if the other factors weigh strongly in favor of relief. But no case holds that an injunctive relief is appropriate where the movement has no likelihood of success whatsoever, and the Eighth Circuit has said that a number of times, including in Mid-America Real Estate Company v. Iowa Realty, 406 F. 3rd 969. That's the case that we have here. We can set aside for a moment the fact that the emergency motion for TRO giving rise to this appeal was filed almost eight months after the meeting that caused all of the alleged harm that the appellant complained of in his motion. These are eight months in which the appellant could have conducted discovery and proceeded to get his case ready for trial, but chose not to. We really don't need to get to that because the record and the law show that Mr. Schlafly was properly removed as a director at that time, and he's raised a number of issues, including notice, the content of the notice, including whether proxy voting was allowed, and also relies on the Illinois statute for removal, and so I'd kind of like to take those in turn. I believe Mr. Schlafly admitted that he no longer contests that the timing of the notice was inappropriate. It's the content of the notice. Well, the notice, which was sent out by three of the directors of Eagle Forum, specifically stated that the three minority directors would be removed, that that was the order of business for the upcoming meeting. So they had full notice that that was going to happen. The proxy issue, Mr. Schlafly has repeatedly contended that he should have been able to vote by proxy. Illinois law, and this is in the Illinois Nonprofit Corporations Act, expressly forbids directors from acting by proxy on any matter. There's no exception to that in the statute, and it's not inconsistent with the statute that Mr. Schlafly relies on. That's the removal of Director Statute 105-108.35. Now we have a bit of a disagreement as to which portion of that statute applies. There is a section, Section B, that says, in the case of a corporation with no members or with no members entitled to vote on directors, a director may be removed by the affirmative vote of a majority of the directors then in office present and voting at the meeting of the board of directors at which a forum is present. So EGLE Forum is an organization that, pursuant to the bylaws, vests all of the power of the organization and the directors. Members have only specifically identified powers, and the only specifically identified power given to the members in the bylaws is their ability to vote on one at-large director. Every other director, and at the time of this meeting there were nine active directors, every other director besides the at-large director is elected by the other directors, and the bylaw makes clear that any power that is not specifically given to the members is reserved for the directors. So maybe we can quibble about whether this is the sort of entity where members have a the organization removed in January of 2017. But even if that provision doesn't apply, if you look further down in the statute, in the case of a corporation with members entitled to vote for directors, no director may be removed except as followed, and then it has, you know, basically that you have to have a two-thirds vote of the person's voting either in person or by proxy. Now that's talking about when members can vote, and members may vote by proxy. Directors may not vote by proxy, as stated in the statute that I referenced earlier, and they're not inconsistent. So what was the director's vote for the removal of some of their colleagues? It was a unanimous vote of six to zero, with three members, the three that were going to be removed did not appear at the meeting. They were welcome to be at the meeting, they opted not to, they passed some, they had their own resolutions that they passed regarding indemnity in a separate forum, but they were not at that meeting. So the unanimous vote of the members that were at the meeting, of the directors that were at the meeting, voted to remove these three. Counsel aside from the agenda item of removal of directors, was there any other item on the agenda that required a membership participation or vote? There was not, no. In fact, typically members have no right to attend the board meetings, they have no right to vote on any matters voted on by the board, and they have no right to any information about that, including financial information. Mr. Schlafly has indicated he should have been given financial information, while a former director doesn't get financial information, because regular members do not get financial information. But I do want to point to subsection four of the removal of directors statute, because I think it's critical, and that section says that if a director is elected by a class of voting members entitled to vote, directors or other electors, that director may be removed only by the same class of members entitled to vote, or directors or electors, which elected the director. It's a bit of a mouthful, but what that is saying is that if only directors were allowed to elect the director, then only directors may vote to remove the director. So this concept that somehow members should have had a vote and should have been able to vote by proxy is just not supported by Illinois law. Is this, well to what extent did the forum's bylaws grant greater rights and protections than the Illinois statute, and if so, what about the Roberts Rules of Order issue? Were the appellants given notice that this was going to happen? A couple things about that. The bylaws do not address removal of directors at all. So the bylaws are silent on that, so we have to look to Illinois law. Well I shouldn't say the bylaws are silent. The bylaws give all power to the directors unless otherwise specified, so presumably the removal power goes to directors unless specified by statute. Here we've got a statute that applies that says that the folks that are able to vote on the directors are the same folks that are able to vote them out and no one else. As to the issue of the bylaws amendment that also occurred at that hearing, we have an issue as to whether Mr. Schlafly suffered any harm from the changes to the bylaw. He hasn't identified how he was harmed, but in any event, the bylaws state that they may be- But wouldn't he be harmed in his ability to participate? I'm sorry? Wouldn't he be harmed in his ability to continue as a member of the board? Certainly he was, his removal certainly, but there's no issue that his removal was noticed up properly and that according to the statute, he was properly removed. After that, he had absolutely no right to participate or to contribute to the proposed bylaws amendments, etc. So, looking at Article 12 of the EGLE forum bylaws, it states that there are two ways that the bylaws can be amended. The one that Mr. Schlafly keeps relying on is the second one that requires, where there's an affirmative vote of two-thirds of all the directors serving, provided that notice of the proposed change to the bylaw is mailed to each director at least 10 days in advance of the meeting. That's one provision, but the first provision states that bylaws may be amended by unanimous vote of the board of directors. At the time that the board of directors in January voted on the bylaws change, they had removed the three minority directors properly, as I just stated. So they did have the unanimous vote of the entire board and they were perfectly entitled to amend the bylaws as they saw fit. Had they given notice of that? And was it required? Notice is not required for unanimous actions of the board. It's only when there is a contested action of the board that that notice is required. And Mr. Schlafly takes some- Seems a very interesting way to conduct business. I'm sorry? Seems a very interesting way to conduct business to remove board members who might vote against what you would want to do and then create an instant unanimous board. Well, yeah. I mean, it's the sort of thing where if you're complying with Illinois law, majority rules. And in this case, they had six of nine board members who wanted to remove these members from the board and the bylaws in Illinois law allowed them to do that, providing there was adequate notice 20 days in advance, which they gave the board members 22 days, as has been previously pointed out. The other issue that Mr. Schlafly takes issue with that happened at that January meeting is the fact that additional board members were added to the board on that day. It's true that the notice didn't specifically state that additional board members would be added. It did specifically state that the three minority board members would be removed, and it stated that such other businesses may come, will be addressed. And Mr. Schlafly relies on Robert's Rules of Order, saying that that's not appropriate at a special meeting, but although Robert's Rules of Order, which would have been in effect at least at the beginning of this meeting, says that the only business to be handled at a special meeting is the business that's identified in the call of the meeting, the rule goes on to say that this does not preclude the consideration of privileged motions or any subsidiary, incidental, or other motions that may arise in connection with the transaction of such business or conduct of the meeting. Obviously, after removing three directors, the business that arose was the need to replace those directors. And the bylaws contemplate that directors may be replaced within the term. Well, accepting Mr. Schlafly's argument, well, statement that this is a hostile takeover, were there, what rights are provided to him or others in his situation to try to combat this hostile takeover? Well, to the extent that he believed that he had a meritorious position or argument, Mr. Schlafly had the opportunity to address that in advance of the January 28th hearing. And in fact, that's some of what Judge Ross took issue with in awarding the fees in this case. The fact that Mr. Schlafly, just a few days before this January 28th hearing, filed an the time, rearranged her schedule, had a conference call with the parties on January 26th, two days before the meeting was to take place. During that call, it became evident that there was a nearly identical motion filed by John Schlafly, who is Mr. Schlafly's brother, along with Ed Martin. John was a former board member. Ed Martin was an ousted president of Eagle Forum. They had filed for, and by the way, Mr. Schlafly and his brother, John Schlafly, were both members of a rival organization that they created called Phyllis Schlafly's American Eagles. And this was done while they were on the board. So in any event, the claims that Mr. Schlafly isn't involved with that other litigation are just not true. It became clear to Judge Fleissig that that litigation was going to have a motion hearing on the day before the meeting was to take place. And the parties, including Mr. Schlafly, agreed to withdraw the motion. He abandoned his claim at that time. Counsel, it seemed to me that there was at least some question of whether Mr. Schlafly was being sanctioned for the conduct of other people and other litigation. Is that proper? I don't believe that that is proper, but he absolutely was not sanctioned for the conduct of other people. He was sanctioned for a couple of things. One, his own conduct in filing multiple lawsuits and multiple forums for what appeared to Judge Ross as the sole purpose of harassing Eagle Forum, including the New Jersey lawsuit that he filed regarding a life insurance policy that clearly shows the only beneficiary as Phyllis Schlafly. The case law is clear. I mean, the only beneficiary is Eagle Forum. It was purchased by Phyllis Schlafly and the case law is pretty clear that where a corporation is named as a beneficiary, it's the corporation and not its members that get the money. But what he really took issue with was the fact that Judge Fleissig took her time out of her schedule to allow Mr. Schlafly to appear in court and to argue against the January meeting. He withdrew that after getting everybody to rush to get it heard. And then he waited eight months, eight months in which he could have done discovery, could have made discovery requests, could have taken depositions, could have gotten his case ready for trial. And then on September 11th, four days before the September board meeting was going to occur and before Eagle Council, which is Eagle Forum's signature event, he files a new emergency motion essentially just relitigating everything that he brought up in January. So he waited these eight months and instead of getting his case ready so that he could prepare a meaningful case to the judge, he just files again for emergency relief when there was no emergency. At that point, he was already properly ousted from the board. He had no right to be at that meeting. He had no right to contest anything that was going to be done at that meeting. And yes, Judge Ross looked at that and found that that was inappropriate and done only for the purposes of harassment. And as such, the judge entered sanction pursuant to the court's inherent authority to do so. Any other questions? I see none. Thank you, counsel. Mr. Schaffley, your rebuttal. Thank you, Chief Judge. Several of those statements by opposing counsel are not in the record anywhere. His statements about how supposedly at that January meeting they staged the votes such as to purge the directors first and then vote on the bylaws, that's nowhere in the record. Several of his other statements are nowhere in the record. The record's actually very clear that they had a side deal to do this, that the membership is against it, and so on as I've briefed in this case. I avoided duplication with other litigation and any suggestion to the contrary is incorrect. And so at that January meeting, there was another motion that was brought by somebody else, not by me, in Madison County to challenge the January meeting. And then I pulled back in federal courts because I didn't want the duplication. I felt the judge would say, well, let Madison County take care of it. It turns out they did not issue a substantive ruling on it, so the issue remained unsettled. I had a motion to remand pending, which was not decided by the federal district court below until early September. So I don't know how I could engage in discovery, which, by the way, this court would not have allowed. Eventually, I did request discovery and the district court has not allowed any discovery below to this day in this case. So I was denied any right to discovery and still am in this case. But while I have a motion to remand pending, I don't think it would have been appropriate for me to make discovery requests or bring a motion for preliminary injunction. I honestly thought there was not federal jurisdiction over this below. But in early September, that's when the district judge ruled that there is federal jurisdiction. That's when he denied the other side's motion dismissed. And very promptly within days, that's when I brought my motion for a ruling on the preliminary injunction. So I've gone over in my mind again and again how I could have done this differently, and I don't see any way I could have done it differently. This is what would be taught in a law school class for dealing with— What did you think was the infirmity of federal jurisdiction? The infirmity, there's no—I'm suing for injunctive relief. That's an excellent question, Chief Judge. I'm suing for injunctive relief. So I did not feel there was a $75,000 amount in controversy. I'm not suing for damages. So I wasn't suing for more than $75,000. There was diversity, but it's for injunctive relief. So I was baffled. It was the other side that did this surprise removal to federal court. I sued in state court, and I was ready to proceed. And right on the eve of the hearing, they removed this to federal court, and I was baffled by that because I wasn't suing for more than $75,000. And there's no federal question jurisdiction here either. Was the removal justification raised before the district court? Yes, I moved to remand, Your Honor, Chief Judge. I moved to remand because I said there's no federal jurisdiction on this. But what the district court held, and I'm not challenging it on appeal, was he held because the assets in EGLE form were more than $75,000 and because there were issues of control over those assets, that that satisfied the $75,000 amount in controversy to establish federal jurisdiction. And I'm not challenging that on appeal. So he held that. But he did not hold that until early September. So it wasn't until he held that that then I could move forward with my motion for preliminary injunction. Just briefly, in my remaining time, Your Honors, I'm a practicing attorney, and I accept an attorney fee award when I've done something wrong, when I made a mistake, or if my client asked me to do something and I did it, and looking back on it as a mistake, and I'm happy to accept that. But in all candor, Your Honor, I look back at this, and I don't see any other way to do it. And I think the district court, because it is an unusual case, because there is some politics in it, and it's certainly not the type of case you usually see in federal court, that he somehow misinterpreted what I was doing when in fact I was doing the only thing I could do to oppose the hostile takeover of this membership corporation. Again, back to what is the federal question involved here? What's the basis of federal jurisdiction? It's an excellent question, Judge Wolman. The district court held that because there's more than $75,000 in assets in Eagle Forum, and because the issues implicated the control of Eagle Forum, that therefore that satisfied the amount in controversy. It's an unpaid position, isn't that correct? Yes, unpaid volunteer position. That's right, Judge Gross. Thank you, Your Honor. Thank you, Mr. Shaffer. Court wishes to thank both counsel for your presence, the argument which you've provided to the court this morning, the briefing which you've submitted. We'll take the case under advisement and render a decision as promptly as possible. Thank you.